Good morning. May it please the Court. I'm A.J. Cutchins for the appellant, Darius Young. The principal claim before the Court is that the appellant was denied the effective assistance of counsel in two regards. First, because his trial attorney was so thoroughly unfit to practice law as to be ineffective per se under the standard associated. Under the standard associated with United States v. Cronick. Second, because his counsel specifically gave him erroneous advice about the sentence he would receive if he pled guilty and so provided ineffective assistance under Strickland and Hill v. Lockhart. At the time she represented the appellant, Attorney Kate Dixon was incompetent to represent anyone in any court. The State Bar said as much when it disbarred Ms. Dixon based entirely on her behavior before and during the time that she was appellant's attorney. Much of that behavior flowed from her prolonged crusade to prove that various Federal judges, the district attorney of Alameda County, and a host of public officials were involved in a conspiracy to kidnap and molest and murder the children of Henry Dixon.  that you're defending? Why did she discharge her first lawyer? Pardon? Why did she discharge her first lawyer? Why did? Why did she? Or are you talking about he? Yeah. Why was the first lawyer discharged? Why did the defendant discharge the first lawyer? The simple answer is ignorance. What? Ignorance, I would say. He was represented initially by the public defender and. Let me ask you about that. Yes. Why didn't the public defender advise him to plead and make a bargain? How long? The public defender defended him for quite a while, didn't he? For a few months. What? For a few months, Judge. And he had two opportunities to make a plea bargain. He did. Why didn't he get advice then? He did get advice. The public defender advised him to do it. Is that in the record? I believe that it is. But if he did that, he had very effective advice twice then and didn't take it. Well. And then he took the initiative to get this crazy character. I agree she's crazy. Yes, Your Honor. But the problem is, I mean, it's kind of a paradox, but he is an incompetent counsel, but he comes out about where he would have come out whoever he had. It's one of those strange things. It's hard to find the prejudice. Well, two things about that, Judge Newman. One is that we're asserting that if she was incompetent per se, that we don't have to show prejudice. And do you have a United States Supreme Court case on that? The United States v. Kroenig. No, that's Dicta. It's Dicta and Kroenig. Well, we're told by the Congress that we have to have a holding of the Supreme Court. Yes. I don't think there's a holding. In Bell v. Cohn, the United States Supreme Court discussed Kroenig as a holding. Well. As though it was a holding of that court. Anybody reading it says it's Dicta. Kroenig itself, yes, I agree. In fact, I think we're stuck with it. Well, except that in Bell v. Cohn. So if you prefer, I will say that Bell v. Cohn is – sets forth the rule that there is such a thing as incompetence per se. But did they reverse on that basis? They didn't reverse on that basis. You don't have a holding where somebody convicted with reverse. Your Honor, I – We're very – I mean, you might say it's outrageous, but that's what Congress chose to do. Your Honor, I have to – with all due respect, I don't think that the Court needs to reverse to establish a constitutional rule. Congress said it that way. Well, I don't – let me point out. I don't think there's a holding unless there's some judicial result. If it's just discussion, it's just discussion. I think if the Court sets forth a rule and then tests the facts of the case under that rule, regardless of how the Court comes out, the rule is set forth. In Strickland v. Washington, which is treated as the seminal case on ineffective assistance, not per se, the companion to Cronick, the Court set forth a very familiar two-part test. I know that you're familiar with it. You must have ruled in a hundred cases. I fought it. Right. And this Court has many, many, many, many times said that is the constitutional rule that we're applying under AEDPA. But in Strickland, the Court upheld the conviction because it applied the test and said, but under this test, he is nonetheless not eligible. I submit that the same is true about Cronick as explicated in Bell v. Cohn. There is a constitutional rule there. I think, Judge Noonan, you've touched on much of what I was going to say about Ms. Dixon's representation. What does the lawyer do wrong? Well, two things. The first is, generally, because she was delusional, she insisted that it was a trial. Not secretly. That he didn't plead. That he didn't plead. What's wrong with that? In this case, he was, as the second circumstance, similar circumstances, suicidal. He had absolutely no defense. So that's the first thing. The second thing is when he recognized that in mid-trial, I've never seen this on a record before, stood up in open court and said, I want to change my plea, despite what my lawyer says, I want to plead guilty and throw myself on the mercy of the Court, she said, if you do that. If he was – if the defendant was absolutely guilty, absolutely guilty was your phrase, how could there possibly be any prejudice? Well, Hill v. Lockhart recognizes a whole string of cases in which ineffective assistance comes in the plea bargaining context. So the ineffective assistance here – I mean, lawyers don't just go to trial. Most of what criminal defense lawyers do in most cases is negotiate a disposition for their clients. She was ineffective because, A, she was completely unable to do so, and second, because when he wanted to plead, she said the shortest sentence you can get is 35 to life. That wasn't true. And she knew it. She was anxious to talk him out of doing what was the most sensible thing for him but didn't fit with her bizarre and paranoid cosmology. And in that sense, that's straightforward ineffective assistance under Strickland and Hill v. Lockhart. The final point that I'll touch on is the conflict of interest claim, which I think is extremely straightforward. Sullivan and its progeny teach that a defendant is denied the assistance of counsel if his attorney has an actual conflict that adversely affects her representation. As we find in Mickens and in this Court's Rodriguez decision, the test boils down to whether, quote, some plausible alternative was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. Your Honor, in this case, the plausible alternative was some form of negotiated disposition. Any such disposition needed not only the approval but the sympathy of Alameda County District Attorney Tom Orloff. Well, that issue wasn't raised in the district court. You're absolutely right. So why isn't it waived? Your Honor, it is with some justice that Mr. Izzouiki points out, and you point out that it was not raised in the district court. This Court retains the discretion to decide it nonetheless if, and the standard is, if the issue that's presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise it in the trial court. In this case, all of the facts to be found, all of the operative facts are spread plainly on the State court record. It's right there nakedly in the transcript. The State has had a full opportunity to brief the issue, and this Court's review of this issue would be de novo in any event. So there's why? Because this Court, the holding, the long holdings of this Court are that it reviews de novo a denial of habeas corpus and also reviews de novo. If we were looking at a State decision. No, I'm not saying you're reviewing the State de novo, but you're reviewing the district court de novo. Well, you just agree it wasn't raised there, so there's nothing to review. What I'm saying is you have the discretion to raise it if it's purely an issue of law, to consider it as purely an issue of law. I mean, what if it's raised in the State court? I understand. So if we're looking at what the State court decided, it certainly isn't de novo review. No, no. No, no. All I'm saying is it's de novo as to the – I'm saying what difference would it have made if the district court had considered it or not. You would still be looking at the district court's decision de novo. The facts are plain. The issue is purely one of law. Okay. If I can amuse you further or answer any questions, I would be glad to. Otherwise, I'll reserve for rebuttal. Okay. Thank you. Mr. Wicke. May it please the Court. Greg Zawicki representing the people. This case was controlled by a series of choices that appellant made long before Ms. Dixon ever became involved in the case. Once appellant rejected the people's two offers prior to the preliminary hearing and was held to answer, the – Mr. Young effectively had chosen to take this case to trial. There were no further determinate term offers made on the part of the people, and any offers made, or at least any attempts at negotiations made both by the public defender and later by Ms. Dixon were rejected. This was a three-strikes case. Once appellant was held to answer, it remained a three-strikes case throughout the entire trial. Well, the most forceful thing, I think, that the Petitioner argues is that the State Bar found that she wasn't competent to represent anybody in any court. Why shouldn't that just be taken? That's true. The State Bar found that eventually she was not competent to represent anyone in any court at the time that she was disbarred. The language leading up to that is somewhat disturbing, and her conduct was bizarre and unusual, to put it plainly. However, there's no finding that she suffered from any sort of mental disease. She may have. However, there's no evidence in this record, nor any evidence in front of the State Bar court, that showed that she suffered from a mental disease or any type of disorder that actually affected her representation prior to the time she was disbarred. And in fact, four of the five charges in her disbarment proceeding had nothing to do with her representation of clients at trial. They all had to do with her poor law practice management, for use of a better term. She would take the money from the clients and then not contact them and do nothing. My finding of unfitness is based on her conduct at a time when she was representing a felon. I mean, at that time, she was unfit. Your Honor, neither this Court nor any California court, as was argued below, has ever held that an attorney who has not been disbarred cannot render assistance of counsel. In other words the general proposition, but if she is in this way, as the evidence suggests, mentally deranged, she can't possibly have the judgment to represent her. If she could, Donald Duck would have been as good a counsel as she was. At this point, Donald Duck would have been able to do about the same as she did. There was nothing she could do. At the time that appellant rejected the people's determinate term offers and was held to answer, there were no more determinate term deals. And in fact, he actually got quite a windfall. At the end of the people's case, when he stood up and said, I want to plead guilty, he said, I will take any determinate term offer. That's exactly what he got here. Eventually, the trial court recalled the sentence, struck one of the priors, and gave him a 20-year determinate term, 20-year determinate term. Well, it worked out. I mean, I agree with you. There wasn't much harm, but it's a disgrace to the system that someone incompetent represented a criminal defendant in a serious trial. It's a blemish, and it's kind of horrible, but California, let it go. Your Honor, both this Court and the United States Supreme Court in Bell v. Cohn have said that if there is a question of mental incompetence, the Strickland test still applies. The reason that test applies is because there are so many vagaries in mental illness that we're not quite sure exactly what happens. If those vagaries played out at trial, the record should support it. Here, we have a trial. We have a trial in which appellant is not contesting any of the actions that Kate Dixon actually took at trial. In fact, she tried as good a case as possible under the circumstances. The problem is, once he chose to reject the people's offers, he was rolling the dice that the options were extremely limited. He could take the case to trial and risk getting a verdict from the jury, or he could plead guilty and beg for the mercy of the court, which up until the court actually struck the priors and recalled the sentence, there was no indication that anything like that would happen. Thus, there's no misrepresentation in suggesting to him that he should take this case to trial. The time of the trial, did the prosecutor know about the malfeasance of the attorney, that she was stealing money from her clients and she was doing all kinds of bad things? Forget the mental problem. The thing that she did that constituted the criminal activity, did the prosecutor know it at the time of this trial? Your Honor, I'm not sure that she was ever actually charged with a crime. The State Bar found that she had misrepresented her clients because she did not take further action on their cases and did not contact them. Did the prosecutor know that? I'm not sure that the record shows that, Your Honor. Would that be important counsel? The prosecutor knew that she was charging the district attorney with running a pedophile ring. He knew that. I would think that the prosecutor would either have actual or constructive knowledge of that, yes. But she was making crazy denunciations of his office. At this point, were they crazy denunciations, though? He must have thought she was crazy. I'm sure that the prosecutor, both in terms of the specific district attorney and the district attorney, Tom Orloff, both thought that these were unfathomed charges, and I believe they were further borne out to be unfathomed charges. Only an insane person would make them. Only an insane person would make them. I'm not sure if that's quite a way of putting this. There's no actual determination that she's insane. Yes, her conduct is bizarre. The prosecutor, though, he doesn't have an obligation to offer appellant a better deal because of this. Oh, but doesn't he have an obligation to tell the court? I think this lawyer is incompetent. Is she incompetent, though? At this point, she is representing clients, and she has not fully crazy, unfounded charges against a variety of public officials. And I'm sure that the prosecutor was aware of that. Did he have an obligation to inform the court of this? I'm sure the court knew as well. But there's nothing in the record that suggests either way. Why would the court know? There were certain court officials that were also accused in this case. I don't know if it was or not, Your Honor. The question is, in looking at a chronic-type situation, the reason that chronic – if it is indeed a holding, and if not, it's dicta – but the reason why a chronic prejudice-per-se situation would apply is simply because prejudice itself is so apparent for the record that the cost of litigating prejudice is not worth it. That's not true here. Here, we have a complete record. We have everything we need to determine what happened in this case. Appellant received quite a windfall when the court struck his sentence and gave him the determinate term offer that he had requested. This Court should not grant him the same windfall. If the Court has no further questions, we would submit the matter. Okay. Mr. Ketchins. Thank you. Your Honor, I was too quick in my concession. The conflict issue, which is what we were talking about, was raised in the district court. Well, sure. A conflict issue was raised, and it had to do with whether she had time – had disclosed the bar proceedings to the court. Right. That's very different from what I was saying. It is some – the argument is somewhat different. Yes. The court, I assert, under the cases that we cite, nonetheless, has the discretion to consider it. The – yes, sir. Your opponent said that she did nothing during the trial, but she did tell him not to plead guilty, didn't she? She did. She told him not to plead guilty and that the least he could get was 35 years to life, which was not true. She knew it wasn't true. She falsely represented the key fact and the key decision for him to make. And for the State to continue to assert that it was a three-strikes case and nothing could happen is absurd, literally, given that in the end it wasn't a three-strikes case. One of the strikes was stricken, and he did receive a lesser sentence. The – Would you like to wrap it up, please? Your time has expired. Okay. I – fine. Two very quick points. Judge Noonan, you point out that the prosecutor didn't inform the court. I'll point out that nobody informed the defendant, who is really the person who should have known how crazy his lawyer was. Lastly, did the prosecutor know she was crazy? He argued that in his closing argument. He made the most of it, but what he didn't do was his duty as an officer of the court and make sure that the proceedings were fair and just. Thank you very much. Thank you, counsel.  All questions raised in this Brazil matter just argued will be submitted. We'll hear next argument in Bradley v. Henry.
judges: Ferguson, Noonan, Rymer